No. 26,009.

LULU D. ALGEO, *Appellant,* v. EMPLOYERS INDEMNITY CORPORATION,
*Appellee.*

SYLLABUS BY THE COURT.

1. REFORMATION OF INSTRUMENT—*Grounds—Mutuality of Mistake.* To warrant the reformation of an insurance policy, asked solely on the ground of mistake, it is essential to show mutuality of mistake.

2. SAME—*Mutuality of Mistake—Burden of Proof.* The burden is on the parties alleging a mistake to prove it, and it must be established by clear and convincing proof.

3. SAME—*Mutuality of Mistake—Evidence.* The evidence is found to be sufficient to support the finding of the trial court that a mutual mistake was not made in the insurance agreement.

Appeal from Sedgwick district court; division No. 1; THOMAS E. ELCOCK, judge. Opinion filed July 11, 1925. Affirmed.

*Charles G. Yankey, W. E. Holmes, D. W. Eaton* and *John L. Gleason,* all of Wichita, for the appellant.

*Kos Harris, V. Harris,* both of Wichita, *Guy M. Cowgill* and *Arthur C. Popham,* both of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an action brought by Lulu D. Algeo to reform a certain policy of health and accident insurance and to recover on the policy as reformed. The trial court gave judgment in favor of defendant, and plaintiff appeals.

Charles L. Algeo and C. J. Skirvin were partners in business in 1918 and 1919 and had offices at El Dorado. Algeo lived at Wichita during that time. P. C. Turner, an agent of the appellee, visited them in their office in November, 1918, and solicited them to take policies of health and accident insurance. Each of them made application upon a written form furnished by the defendant for a principal-sum policy, which was known as form 68. In due time a policy was issued to each of the parties on form 68, which entitled each beneficiary to $5,000 in case of accidental death. The policy so issued was delivered to the insured, Algeo, exhibited by him to his wife, and both understood it to be a policy for a principal sum

---

1. Reformation of Instruments, 34 Cyc. p. 915.   2. Id., 34 Cyc. pp. 980, 984.
3. Id., 34 Cyc. p. 988.

of $5,000 to be paid in case of accidental death. The evidence shows that they read the policy and put the same away in a safety deposit box in Wichita. Later, and in the early part of January, 1919, Turner again solicited them to take another policy, and each signed an application for a policy, the application being on a form furnished by the company, the blanks of which were filled in by Turner, the agent, and signed by the applicants. Upon this application a policy was issued substantially similar to the November policy with respect to insurance against injuries and sickness, but it was what is termed a nonprincipal policy and only provided for a payment of $100 in case of death. The second policy was placed in a safety deposit box with the former one. Two renewal premiums were made on the November policy and one upon the January policy. The insured was accidentally killed on December 20, 1920, while both of the policies were in force. After the death of the insured plaintiff presented for payment both policies, and the defendant paid the full amount of the November policy, but refused payment on the January policy in excess of the sum of $100. Plaintiff brought an action on the January policy, asking for its reformation and enforcement as reformed, but this action was dismissed for some reason not stated. Later another action was begun based on the same grounds, and this was dismissed sometime afterwards. The present action was commenced, and it was alleged that at the time the second policy was issued it was accepted by the insured without reading it, under the belief that it contained the terms and provisions set out in the November policy, and also that defendant intended that it should contain the terms and provisions of that policy. It was further alleged that the insured in his lifetime did not discover that the policy received by him did not contain all the provisions and terms of the earlier November policy. There was an averment that plaintiff did not discover that the policy so issued contained provisions other than those provided in the November policy, and that as soon as she did the action to reform the policy and recover thereon was commenced.

Does the evidence require the reformation of the policy in suit? Was it the intention of the parties that it should contain the same provisions as were contained in the November policy? There were marked differences in the policies, and some of these were plain, important and easily discerned. An important one is the stipula-

tion in the first policy for a payment of $5,000 in case of accidental death of the insured, while the latter one issued in January provided that only $100 should be paid in the event of death by accident. The November policy was what was called a "principal-sum policy," while the later one was designated as a "no-principal-sum policy." It was explained that because some insurance departments required the naming of a fixed sum in a policy, the defendant named a nominal sum of $100 in what was called its no-principal-sum policy. There was testimony that the insured bargained for a special policy different from the one previously delivered to him. He asked for the no-principal policy, and when the application was made the agent wrote across its face the phrase "no principal sum," and this was done in the presence of the insured, whose attention was called to the writing on the face of the application. Some testimony in behalf of plaintiff was produced to the effect that the agent Turner told the insured when the application was made that the January policy would be the same as the one previously issued in November. On the other hand, defendant offered testimony to the effect that Algeo told the agent that he wanted a policy without principal sum, and was told by the agent that such a policy could be written, for which a less premium would be required, and that when the January policy was delivered to Algeo he looked it over for about five minutes and then declared he was satisfied with it.

Another difference in the policies was that the first premium for the November policy was $83 and $80 per year thereafter, while the premium on the later policy was $79 the first year and $76 per year thereafter.

There is a conflict in the testimony as to whether a mistake was made in reducing the agreement to writing and also as to mutuality of mistake. Plaintiff alleged that it was the intention of both parties to write a policy similar in its terms to the one made in November, but that defendant by inadvertence and mistake wrote a different one. Where no fraud is claimed and the reformation of an instrument is sought solely on the ground of a mistake, it is essential that there be mutuality of mistake; that is, that both parties understood that the real agreement was what plaintiff alleges it to be, but had unintentionally prepared and executed one which did not express the true agreement. (*Reeder v. Gorsuch,* 55 Kan. 553, 40 Pac. 897; *Cox v. Beard,* 75 Kan. 369, 89 Pac. 671). As we have

Algeo v. Employers Indemnity Corporation.

seen, the defendant denied that there was a mistake in framing the policy, and the testimony accepted and believed by the court was to the effect that there never was an intention on the part of the defendant at least that the policy should contain other provisions than were written in it. Presumably an agreement committed to writing and signed by the parties expresses their intention, and when a mistake is claimed and controverted the burden is on the party alleging a mistake to prove that one was made and that the writing does not truly state the intention of the parties or the agreement actually made. To entitle a party to a reformation a high order of proof is necessary to establish that a mistake was made (*Kratz v. Padfield*, 111 Kan. 396, 207 Pac. 776), and further that it was the intention of both parties to make the agreement which the plaintiff alleges was really made. The testimony of the plaintiff did not convince nor satisfy the mind of the trial court that a mutual mistake had been made, and in view of the finding of the court, supported as it is by the evidence of the plaintiff, it must be held that plaintiff failed to establish a right to a reformation of the policy. (*Oil & Gas Co. v. Wasson,* 111 Kan. 124, 206 Pac. 320.)

An objection was made to some testimony that was excluded, but an examination of the same leaves no doubt that the ruling of the court was correct.

The judgment is affirmed.