118 So.2d 850 (1960)
OLD COLONY INSURANCE CO., Appellant,
v.
Frank TRAPANI, d/b/a Verrone Hair Stylists, Appellee.
No. 1327.
District Court of Appeal of Florida. Second District.
March 16, 1960.
Rehearing Denied April 4, 1960.
*851 John S. Neely, Jr., Fleming, O'Bryan & Fleming, Fort Lauderdale, for appellant.
T. Paul Hodge, Miller & Miller, Fort Lauderdale, for appellee.
ALLEN, Chief Judge.
The appellee, as plaintiff in the lower court, brought an action for reformation of an insurance contract and judgment thereon against the appellant as defendant. The complaint alleged that as a result of an injury to a customer in plaintiff's beauty parlor, plaintiff was forced to pay a judgment for the injury, for which plaintiff thought the Old Colony Insurance Company should have been liable as his insurance carrier. The defendant answered denying coverage under the policy with plaintiff, and alleged that there was no mutual mistake, thus no cause for the requested reformation. After trial before the chancellor, final judgment was entered granting reformation of the insurance policy and awarding plaintiff damages for the previously awarded judgment and attorney's fees plus interest thereon.
The plaintiff operates two beauty shops in the City of Fort Lauderdale, which will be hereafter referred to as the Searstown Shop and the Gateway Shop. In February, 1955, plaintiff negotiated with Cartwright and Coffman, insurance agents for defendant, for insurance coverage at the Gateway Shop. Apparently the plaintiff requested a policy to cover anything that might happen during the operation of the shop. The defendant's agents executed to plaintiff, with defendant as insuror, an Owner's, Landlord's and Tenant's Liability Policy covering the Gateway Shop.
Plaintiff did not read the policy but, if he had, he would have noticed that there was attached to the policy a rider entitled, "Exclusion of Professional Services," which stated:
"This endorsement, effective February 2, 1955
 (12:01 AM, standard time)
forms a part of policy No. CGL-354166 issued to Frank Trapini dba Verrone Hair Stylist by Old Colony Insurance Company. Such insurance as is afforded by the policy does not apply to the rendering of professional services or the omission thereof.
 s/Basil C. Coffman
 Authorized Representative"
The plaintiff thereafter opened the Searstown Shop in a new shopping center but did not obtain insurance coverage on this new shop. An accident subsequently occurred in the new shop. An employee of the plaintiff permitted an appliance, used in *852 rinsing the hair of the customer, to fall on the head of the customer, causing injuries to the customer's eyes and nose. Subsequently, the plaintiff called Cartwright, defendant's agent, and inquired as to whether his insurance policy covered such accidents at the Searstown Shop. Cartwright advised the plaintiff that such accidents at the Searstown Shop were not covered by the policy; but that such accidents occurring at the Gateway Shop would be covered. Plaintiff settled this claim for injuries with the customer.
On December 31, 1955, a similar accident occurred in the Gateway Shop. An employee of the plaintiff permitted the hair rinser to fall on a customer's head thereby causing injuries to the customer. The injury was reported to defendant's agents who in turn notified the defendant that it was their opinion that defendant was liable under the policy. After defendant investigated the accident, liability for the injury was denied by defendant on the basis that the accident occurred during the rendition of professional services which was excluded from coverage by the attached rider previously mentioned. The defendant thus refused to defend the suit filed by the customer and plaintiff hired an attorney and defended the suit. Judgment was recovered by the customer in the amount of $1,500, which plaintiff paid and in addition it appears that plaintiff expended $400 for attorney's fees. When the instant suit was tried and judgment entered for plaintiff, the chancellor awarded to plaintiff as damages: the $1,500 judgment plus the $400 for attorney's fees expended in the prior action; interest thereon of $114; $400 for attorney's fees in the present action; and also the costs expended by plaintiff in the instant suit making a total of $2,414.
The decisive question before this court is whether the plaintiff established sufficient evidence to justify the granting of reformation and judgment in its favor by the lower court. To justify the reformation of an insurance contract or policy it must appear that by inadvertence, fraud, or mutual mistake of the parties, the policy or contract fails to express, or conform to the contemplation of the parties. Where one of these grounds exists, equity will grant relief or reformation if it can be demonstrated that the contract, as reduced to writing, does not accurately set forth the meeting of the minds of the parties. Rosenthal v. First Nat. Fire Ins. Co., 74 Fla. 371, 77 So. 92.
In ascertaining whether a mistake actually exists, it is essential to determine the contemplations of the parties at the time the contract was reduced to writing. The plaintiff, Frank Trapani, testified that at the time he leased the premises where the Gateway Shop was located, the defendant's agent, Cartwright, told plaintiff that he would need "Owners' and Landlords' Liability Insurance." The plaintiff further stated that this was precisely the type policy which he subsequently purchased from defendant for coverage at the Gateway Shop. Cartwright testified that at the time he was discussing this insurance coverage with plaintiff that he may have told plaintiff that "if someone got hurt in his shop from a dryer falling on them, or some other falling object, he would be covered." At the trial Cartwright stated that he presumed he made this statement to plaintiff and that:
"I'm not changing that statement. I don't adjust the claims. I only sell the policies."
After plaintiff testified concerning the accident at the Searstown Shop, he stated that when he asked Cartwright if the accident was covered that Cartwright replied:
"`The policy you got doesn't cover the Searstown shop. Had the accident happened at the Gateway shop, you would have been covered.'"
Cartwright testified that plaintiff inquired whether the fact that the Gateway shop was covered would give him coverage at the Searstown shop under a blanket coverage. *853 Then, according to Cartwright's testimony, the following answer was given:
"He came over to see me some time after this occurrence took place, and asked whether he was covered under his policy at 1960 Sunrise. I told him it covered the location at 1960, but did not cover the location at Searstown.
* * * * * *
"No. I didn't say he would have been covered against that particular incident. I told him he had insurance and the company would protect him in the Sunrise store. This is the only verbal conversation between Frank and myself. The fact of whether the injury was a result of malpractice or the result of an ordinary occurrence, I am not in a position to determine that."
Cartwright also stated that he subsequently wrote the company to the effect that he, Cartwright, thought the injury at the Gateway shop was covered by plaintiff's policy with defendant company.
It is clear from the testimony in the record that the parties at the time of entering into the contract intended that plaintiff's Gateway shop was to be covered by an Owners' and Landlords' Liability policy with the defendant company. There is no showing that at that time any other type coverage was contemplated or requested. It is equally clear that after the accident at the Searstown shop and the subsequent inquiry by plaintiff as to his insurance coverage that the defendant's agent, Cartwright, may have created the impression to plaintiff that the Gateway policy covered plaintiff for any injury for which he might become legally liable at the Gateway shop. In addition, there was an assurance by the agent, after the accident, that the accident was covered although in fact it was not covered due to the terms of the rider to the Gateway policy.
In order to warrant the reformation of an insurance policy, the evidence must be clear and convincing, and sufficient to overcome the strong presumption arising from the policy that it correctly expresses the intention of the parties. See Continental Casualty Co. v. City of Ocala, 99 Fla. 851, 127 So. 894. A mere preponderance of evidence is not sufficient. In regard to the requisite burden of proof to entitle a plaintiff to reformation on the ground of mutual mistake, the court stated in Fidelity Phenix Fire Ins. Co. of New York v. Hilliard, 65 Fla. 443, 62 So. 585, 586:
"It is equally well settled that an insurance policy as issued and accepted is prima facie the contract of the parties; and, in order to have it reformed, the burden is on the plaintiff to show that a different contract was entered into from that which was reduced to writing, and this fact must be proved by clear, convincing, and satisfactory evidence, not alone by a preponderance of the evidence, but he must establish the fact by such evidence as to show conclusively that a mistake had been made and to satisfy the court of such mistake beyond a reasonable doubt. 16 Am. & Eng. Ency. of Law, pp. 869 and 879, and numerous citations; Knight, Norman & Co. v. J.C. Turner Cypress Lumber Co., 55 Fla. 690, 45 So. 1016; Indian River Mfg. Co. v. Wooten, 55 Fla. 745, 46 So. 185; Prior v. Davis, 58 Fla. 510, 50 So. 535. * * *"
Viewing the facts and all reasonable inferences that may be drawn from them in the light most favorable to the insured, it is clear that as a matter of law reformation was not warranted.
The fact that after the loss the defendant's agent was of the opinion that the accident was covered, lends no support to plaintiff's contention of a mutual mistake at the time the policy was executed in the instant case. It is manifest that, at the time the policy was issued, neither party contemplated the type coverage which *854 was subsequently sought by plaintiff in its suit for reformation. An erroneous opinion of law by defendant's agent after the loss has occurred could not vary the terms and conditions of the previously executed policy. See 2 Couch on Insurance, sec. 531; State Farm Mutual Automobile Ins. Co. v. Petsch, 10 Cir., 1958, 261 F.2d 331; Carva Food Corp. v. Equitable Fire & Marine Ins. Co., 4 Cir., 1958, 261 F.2d 254.
For the reasons assigned herein we hold that plaintiff was not entitled to a reformation of the insurance policy and the judgment of the lower court must therefore be reversed.
Reversed.
KANNER, J., and STEPHENSON, GUNTER, Associate Judge, concur.